**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COLLEEN WITMER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MITEL NETWORKS CORPORATION, JOHN P. MCHUGH, PETER D. CHARBONNEAU, BENJAMIN H. BALL, DAVID M. WILLIAMS, TERENCE H. MATTHEWS, MARTHA H. BEJAR, RICHARD D. MCBEE, and SUDHAKAR RAMAKRISHNA,<br><br>Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on April 24, 2018 (the "Proposed Transaction"), pursuant to which Mitel Networks Corporation ("Mitel" or the "Company") will be acquired by affiliates of Searchlight Capital Partners, L.P. ("Searchlight").

2.  On April 23, 2018, Mitel's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an arrangement agreement (the "Arrangement Agreement") with MLN AcquisitionCo ULC and MLN TopCo Ltd.  Pursuant to the terms of the Arrangement Agreement, shareholders of Mitel will receive $11.15 in cash for each share of Mitel common stock.

3.  On June 8, 2018, defendants filed a proxy statement (the "Proxy Statement") with

the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement, which scheduled a stockholder vote on the Proposed Transaction for July 10, 2018, omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES AND RELEVANT ENTITIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Mitel common stock.

9. Defendant Mitel is a Canadian corporation and maintains its principal executive offices at 350 Legget Drive, Ottawa, Ontario K2K 2W7. The Company has offices located at 1385 Broadway, Suite 700, New York, NY 10018. Mitel's common stock is traded on the

NasdaqGS under the ticker symbol "MITL."

10. Defendant John P. McHugh ("McHugh") has served as a director of Mitel since March 2010.

11. Defendant Peter D. Charbonneau ("Charbonneau") has served as a director of Mitel since February 2001.

12. Defendant Benjamin H. Ball ("Ball") has served as a director of Mitel since October 2007.

13. Defendant David M. Williams ("Williams") has served as a director of Mitel since January 2014.

14. Defendant Terence H. Matthews ("Matthews") co-founded Mitel in 1972 and currently serves as Chairman of the Board of Mitel.

15. Defendant Martha H. Bejar ("Bejar") has served as a director of Mitel since March 2017.

16. Defendant Richard D. McBee ("McBee") has served as President and Chief Executive Officer ("CEO") of Mitel since January 2011.

17. Defendant Sudhakar Ramakrishna ("Ramakrishna") has served as a director of Mitel since May 2015.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Non-party Searchlight is a global private investment firm with offices located at 745 Fifth Avenue, 27th Floor, New York, NY 10151.

20. Non-party MLN AcquisitionCo ULC is a British Columbia unlimited liability company formed by funds advised by affiliates of Searchlight. MLN AcquisitionCo ULC is a

party to the Arrangement Agreement.

21. Non-party MLN TopCo Ltd. is a Cayman Islands exempted company and a party to the Arrangement Agreement.

## CLASS ACTION ALLEGATIONS

22. Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Mitel (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23. This action is properly maintainable as a class action.

24. The Class is so numerous that joinder of all members is impracticable. As of April 25, 2018, there were approximately 121,225,823 shares of Mitel common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be

dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

29.     Mitel is a global market leader in business communications, powering more than two billion business connections.

30.     The Company helps businesses and service providers connect, collaborate, and provide innovative services to their customers.

31.     Mitel's innovation and communications experts serve more than 70 million business users in more than 100 countries.

32.     On April 23, 2018, the Individual Defendants caused the Company to enter into the Arrangement Agreement.

33.     Pursuant to the terms of the Arrangement Agreement, shareholders of Mitel will receive $11.15 in cash for each share of Mitel common stock.

34.     According to the press release announcing the Proposed Transaction:

> Mitel® (Nasdaq:MITL) (TSX:MNW), a global leader in business communications, today announced that it has signed a definitive arrangement agreement to be acquired by an investor group led by affiliates of Searchlight Capital Partners, L.P. ("Searchlight") in an all-cash transaction valued at approximately $2.0 billion, including Mitel's net debt. Under the terms of the agreement, to be completed pursuant to a plan of arrangement, upon completion Mitel shareholders will receive $11.15 per common share in cash. This exceeds Mitel's 52-week and last three-year-high price and represents a premium of

5

approximately 24% to the 90-calendar-day volume-weighted average price of Mitel common shares through April 23, 2018. Upon completion of the transaction, Mitel will become a privately held company, which is expected to provide the company with additional flexibility to accelerate its move-to-the-cloud strategy.

The Mitel Board of Directors has unanimously determined that the transaction is in the best interests of Mitel and fair to Mitel shareholders, and will recommend that Mitel shareholders approve the arrangement. . . .

The arrangement is not subject to a financing condition. The transaction is expected to close during the second half of 2018, subject to customary closing conditions, including receipt of shareholder, regulatory and court approvals. The arrangement agreement includes a 45-day "go-shop" period, which permits Mitel's Board of Directors and advisors to actively solicit, evaluate and potentially enter into negotiations with parties that make alternative acquisition proposals through June 7, 2018. There can be no assurance that this process will result in a superior offer. Mitel does not intend to disclose developments with respect to the solicitation process unless and until the Board of Directors makes a determination requiring further disclosure.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

35. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

36. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

37. First, the Proxy Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisors, Jefferies LLC ("Jefferies") and National Bank Financial Inc. ("National Bank").

38. With respect to Mitel's financial projections, the Proxy Statement fails to disclose: (i) unlevered free cash flow; (ii) all line items used to calculate Adjusted EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

39. With respect to Jefferies' Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal value of Mitel; (ii) the inputs and assumptions underlying the

6

discount rates ranging from 10.6% to 11.6% and the perpetuity growth rates ranging from 2.5% to 3.5%; (iii) projected cash and cash equivalents; (iv) certain equity interests and promissory notes; (v) projected total debt, unfunded pension obligations, and capital leases; and (vi) the fully diluted Mitel common shares provided by Mitel's management.

40. With respect to Jefferies' analysis of premiums paid, the Proxy Statement fails to disclose the transactions observed by Jefferies as well as the premiums paid in such transactions.

41. With respect to National Bank's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the range of terminal values of Mitel; (ii) the inputs and assumptions underlying the range of discount rates of 10.8% to 12.8% and the perpetual growth rates ranging from 1.0% to 3.0%; and (iii) net debt, pension, and tax attributes.

42. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Further, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43. Second, the Proxy Statement omits material information regarding potential conflicts of interest of the Company's financial advisors.

44. The Proxy Statement fails to disclose the nature of the past services Jefferies provided to the parties to the Arrangement Agreement and their affiliates.

45. The Proxy Statement fails to disclose the amount of compensation National Bank has received or will receive for the services it provided to the Company in connection with the

Proposed Transaction.

46. Additionally, the Proxy Statement fails to disclose the nature of the past services National Bank provided to the parties to the Arrangement Agreement and their affiliates, as well as the amount of compensation received for providing such services.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. Third, the Proxy Statement fails to disclose whether any nondisclosure agreements executed by the Company and prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

49. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

50. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Transaction; (ii) Reasons for the Arrangement; Recommendation of the Board; (iii) Opinions of Financial Advisors; and (iv) Projected Financial Information.

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Mitel

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Mitel is liable as the issuer of these statements.

54. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

57. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of Mitel within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Mitel and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

64. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the

1934 Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

|  |  |
|---|---|
| Dated: June 21, 2018 | **RIGRODSKY & LONG, P.A.** |
|  | By: */s/ Timothy J. MacFall* <br> Timothy J. MacFall <br> 825 East Gate Boulevard, Suite 300 <br> Garden City, NY 11530 <br> (516) 683-3516 <br> tjm@rl-legal.com |
|  | Brian D. Long <br> Gina M. Serra |
| **OF COUNSEL:** | 300 Delaware Avenue, Suite 1220 <br> Wilmington, DE 19801 |
| **RM LAW, P.C.** <br> Richard A. Maniskas <br> 1055 Westlakes Drive, Suite 300 <br> Berwyn, PA 19312 <br> (484) 324-6800 <br> rm@maniskas.com | (302) 295-5310 <br> bdl@rl-legal.com <br> gms@rl-legal.com <br><br> *Attorneys for Plaintiff* |